*A. G. M. Robertson* for assessor.

*Castle & Withington* for tax-payer.

---

# IN RE ASSESSMENT OF TAXES OF H. HACKFELD & COMPANY, LIMITED, APPEAL BY THE TAX ASSESSOR FROM TAX APPEAL COURT, FIRST TAXATION DIVISION.

ARGUED MARCH 14, 1905.        DECIDED MARCH 27, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF WILDER, J.

INCOME TAX—*loss not to be regarded as an actual loss to be deducted from income because written off—a loss written off on the books of the tax-payer in this case not a loss actually sustained during the year.*

The tax-payer, H. & Co., owned the stock of the Hawaii Mill Co., Ltd., and its books showed a total indebtedness of this company

of $384,000. Of this sum H. & Co. wrote off on its books to profit and loss $150,000. The indebtedness of the Hawaii Mill Company was for advances since July, 1901, aggregating $564,442, of which sum repayments had been made amounting to $212,455. H. & Co. continued to make advances after writing off $150,000. Held: The sum written off cannot be regarded as a loss "actually sustained during the year," nor did it become an actual loss by the mere act of writing off that sum to the account of profit and loss.

Statement of case: The case is thus stated in the tax-payer's brief:

"The loss in question in this case ($150,000) arose by reason of advances to the Hawaii Mill Co., Ltd. It was shown that the total indebtedness of this company to the taxpayer was about $384,000, that, in the taxation year and after a consultation among the directors of H. Hackfeld & Co., Ltd., and a careful examination of the assets of the company and the prospects for the payment of the whole amount advanced, it was decided that it would be impossible to expect a full reimbursement. The Hawaii Mill Co., Ltd., was practically insolvent, but in view of the prospects of its getting more land and the rising price of sugar, there was thought to be a chance that a portion of the large debt would be paid. So far as the deduction of $150,000 (and perhaps a good deal more) was concerned, however, it was agreed by all that it at least would be an absolute and complete loss and that amount was therefore written off the tax-payer's books. There was also a verbal understanding between the tax-payer and the Hawaii Mill Co., Ltd., that the debt should be considered as so reduced. The evidence showed and the court found (even the dissenting commissioner) that the deduction was made honestly, in good faith and without any purpose of evading the tax laws. The funds in question were unquestionably advanced by the tax-payer and absolutely no evidence was put on by the assessor to controvert the claim that an actual loss was suffered amounting to at least $150,000 and perhaps to a great deal more.

"In discussing a somewhat similar case this court said in

15 Haw. at p. 502: 'As to whether particular losses have oc-
curred in a particular year or in some other year, it is some-
times difficult to say. *More or less latitude should be allowed
as to when debts, for instance, have become worthless.* Prob-
ably a worthless debt could not be held to be written off in whole
or in part in subsequent years for the purpose of evading the
income tax law.' And on page 505 in discussing the question
as to when a claim becomes worthless, the court says: 'The
testimony shows that it was absolutely worthless then (referr-
ing to a previous period) but that up to the time or not long
before there was some chance that the embarrassed company
might pull through. In our opinian the decision of the tax
appeal court allowing deductions should be affirmed.' This
quotation comes very close to covering the case at bar, save
that in the present case it does not appear that there was any
previous certainty that the debt was worthless.

"The testimony of the deputy assessor fully sustains that of
the tax-payer. He went carefully over the situation and satis-
fied himself that there was a bona fide loss (T. p. 6.) The court
will note that cases where the assessor and tax-payer are in
agreement, as in the cases in which we appear, are rather rare
and we think this fact entitled to due consideration.

"Counsel for the assessor make two contentions (1) That
the debt was worthless before and (2) That it is not worthless.
While these positions seem a trifle inconsistent we will deal
with them as they are made.

"The question of a 'voluntary abandonment' hardly needs
discussion. It is almost impossible to conceive of a case where
a party will throw away $150,000, knowing that it will be a
total and absolute loss. It may be that the debt became bad
before the year in question, but the tax-payer did not so con-
sider it and claimed no deduction for it. As this court has
pointed out, considerable latitude must be allowed in decid-
ing when a debt is bad. Plaintiff's testimony shows that it
did not write the amount off until it was sure that it was a
loss (T. 24), and it would be a harsh ruling indeed and not
an allowance of considerable or any latitude to hold that this
loss occurred previously. There is also absolutely no testi-
mony to show any 'investment of capital,' as counsel calls it.

There was a loan pure and simple. The fact that the tax-payer owns the stock of the Hawaii Mill Co., Ltd., can make no possible difference. A corporation is an entity entirely distinct and separate from its stockholders.

"Counsel's next contention is that no loss has yet been suffered and this was the view taken by Commissioner Lansing in his dissenting opinion. We submit that it is untenable. Both the tax-payer and the assessor, after carefully examining the situation were convinced that the loss had occurred, the amount has been written off the books of the tax-payer and it has further agreed with the Hawaii Mill Co., Ltd., not to enforce the claim, knowing that it would be useless. The fact that no suit has been brought to collect is wholly immaterial. There is still a tremendous amount owing to the tax-payer, and to obtain a judgment would ruin the Hawaii Mill Co., Ltd., probably force it into bankruptcy and gain nothing for the tax-payer, if indeed it would not cause a still more serious loss. Counsel's claim that there is an attempt to evade the tax laws is expressly controverted by the evidence and by the decisions of all three of the commissioners. A person is not likely to wipe an item of $150,000 off the slate when there is a possible chance of collecting it. And in this case it is at least noteworthy that the assessor was unable to put on any evidence to substantiate the claims of his counsel. The evidence probably shows that a good deal more than $150,000 was lost and we submit that any attempt at evasion would not have stopped with this sum.

"The fact, somewhat relied on, that the tax-payer is still making advances seems to us to be a minor factor in the case. If it suddenly shut down the debtor would probably go to pieces and an even greater loss would ensue. If Hackfeld & Company are making profits in some branches of its business, as contended, and losing them in others, it is simply a stand off and presents no reason why it should be taxed, when the sum total shows a loss."

The assessor's contention is thus stated:

"Our objections to the allowance of this item are (1) that the alleged loss did not occur within the taxation year, and, (2) that it was not proven to be a bad or worthless debt.

"The evidence shows that this item was on arbitrary amount written off to profit and loss, being a portion of an open book

indebtedness of Hawaii Mill Co. to Hackfeld & Co. for merchandise sold and cash advanced to the former. A statement of Hackfeld & Co. filed in evidence shows that advances made since July, 1901, aggregate the sum of $564,442, and repayments aggregating the sum of $212,455. And the evidence is that Hackfeld & Co. continue to make advances.

"There is no evidence that there was any change of conditions with respect to this account during the taxation year. If the Hawaii Mill Company is insolvent now, it was insolvent more than a year ago. And we take it that money or merchandise furnished to a concern known to be insolvent cannot be claimed to be a loss. It would be nothing more than a 'voluntary abandonment,' which, according to the decision in the *Hawaiian Commercial Co.* case (14 Haw. 601), is not deductible. A tax-payer cannot throw away his money and then claim that he has sustained a loss within the meaning of the income tax act. The $150,000 written off was a part of an indebtedness running back over a number of years. The loss did not occur within the past year. If the Hawaii Mill Co. was not insolvent when these advances were made, there having been no particular change of conditions since, it is not insolvent now. In this view of the case, this was not a matter of 'voluntary abandonment,' but an investment of capital. The evidence shows that the Hawaii Mill Co. is a corporation whose entire stock is owned by H. Hackfeld & Co., thus indicating that Hackfeld & Co. have simply taken a large amount of the profits made out of some branches of its business and invested them in another branch of its business. In so far as any of these advances were used in necessary running expenses of the plantation, they would be deductible in the Hawaii Mill Company's return.

"We further contend that as the Hawaii Mill Co. is a going concern having assets consisting of mill, crops, implements, leasehold and fee simple lands, and no attempt having been made to enforce collection of the debt, it should not be held to be worthless or bad, and therefore, deductible as a loss. This court, in its decision in the *Income Tax Cases,* 15 Haw. 502, said that while more or less latitude should be allowed as to when debts have become worthless, yet a debt could not be written off in whole or in part in subsequent years for the purpose of evading the income tax. The court also made an observation that is applicable to this case. 'While, as already stated, some

discretion must be allowed business men in determining when a debt becomes bad and should be written off, it seems that in this instance no attempt was made to collect that amount and it was apparently as clearly worthless before July first as after that.'

"We contend that the burden was upon the tax-payer to prove its right to make the deduction as claimed and that it has failed to sustain that burden with satisfactory evidence. We submit therefore that the assessment should be sustained."

Per curiam: The tax-payer's deduction from its income for the year 1903 of the sum of $150,000 by reason of its estimate of the loss in respect of the Hawaii Mill Company, which it owns, cannot be regarded as a loss "actually sustained during the year." Sec. 1281, R. L. This estimate of the loss did not become an actual loss by the mere act of writing it off to the account of profit and loss, and it cannot be allowed.

The decision of the tax appeal court is modified accordingly.

*A. G. M. Robertson* for assessor.

*Kinney, McClanahan & Cooper* for tax-payer.